STATE *vs.* INHABITANTS OF MADISON.

*Indictment. Pleading. Certiorari—ineffectual till writ issues.*

An indictment against a town for defective highway need not allege the width of the way.

Where the indictment, in such case, alleges that the highway was duly and legally laid out and established in the defendant town, a clause describing the highway "as laid out by the town," may be rejected as surplusage.

The granting of a writ of *certiorari* to quash the proceedings of county commissioners in locating a highway, does not, *ipso facto*, quash such proceedings, but their doings, where they have jurisdiction, remain valid until and unless the writ is issued.

ON EXCEPTIONS.

INDICTMENT for a defective highway. The alleged defect was admitted, the defendants contending that they were not liable to maintain and keep in repair the way in question.

February 9th, 1827, the proprietors of Norridgewock Falls Bridge were incorporated and authorized to erect a toll bridge "across the Kennebec River between Madison and Anson," at some suitable place between Weston's Ferry and Norridgewock Falls.

During the two years subsequent to the passage of this act, the proprietors erected a bridge in accordance with the provisions of their charter from Anson southeasterly, to an island which lay

wholly within the town of Madison. There was no road at this time leading easterly from the terminus of the bridge in Madison, and the proprietors built such a road to a highway then in use in the defendant town. In building this road it was necessary to erect a small bridge, about two rods long, to connect the island with the other portions of Madison. The latter bridge was never used as a toll bridge, and was kept in repair by the proprietors till 1844, in which year a town way was laid out by the county commissioners, upon appeal, over the island, and across the small bridge. This town way was subsequently discontinued, and in 1847, the county commissioners laid out a highway from the end of the toll bridge, over the small bridge for a defect in which this indictment was found, through Madison, a part of Cornville and Skowhegan.

A writ of *certiorari* was granted upon petition therefor, to quash the proceedings of the commissioners in locating the highway; but there was no evidence that the writ was ever issued.

From 1844 to 1870 this road was maintained by the defendant town.

The defendants objected to the introduction in evidence of the record of the latter location above referred to, because the indictment described the road as "laid out by the town of Madison," and because there was no allegation in the indictment of the width of the road; but the court admitted the record. The highway was described in the indictment as legally laid out and established. At a former trial of this case the jury found specially that the channel over which the bridge in question was erected was a part of Kennebec River at the time the charter was granted, and up to the time of the trial.

The defendants contended that the legal effect of the granting of the writ of *certiorari* was to render invalid the proceedings of the county commissioners, in the location of the way; that the commissioners could not, by attempting to locate a road over the site of the toll bridge, impose upon the defendants any obligation to maintain or rebuild the bridge, nor would the location of a road,

by them, over such site, impose any such obligation upon the defendants, and that, upon the admitted facts, the indictment could not be maintained; that the obligation to rebuild and maintain the bridge in controversy rests upon the Toll Bridge Corporation alone. The presiding justice refused to give instructions in accordance with these propositions, as requested, and to this refusal and the admission of the records in evidence the defendants excepted, the verdict being against them.

*D. D. Stewart,* for the defendants.

The acceptance of the charter by the Toll Bridge Corporation, and the taking of tolls impose upon that corporation the duty of maintaining the bridge. Angell on Highways, § 271; *Commonwealth* v. *Worcester Turnpike Co.,* 3 Pick., 327; I Bouvier's Institute, § 443; *Charles River Bridge* v. *Warren Bridge,* 7 Pick., 496; 11 Pet., 565; *Mower* v. *Leicester,* 9 Mass., 250; *Russell* v. *Devon,* 2 D. & E., 671; *Randall* v. *Cheshire Turnpike Co.,* 6 N. H., 147; *Bigelow* v. *Randolph,* 14 Gray, 543; *Chase* v. *Springfield Bridge Co.,* 6 Allen, 514; *Weld* v. *Pro. of Booms,* 6 Maine, 97; *State* v. *Gorham,* 37 Maine, 459; *Orcutt* v. *Kittery Point Bridge Co.,* 53 Maine, 500.

The verdict of the former jury establishes the fact that this smaller channel was a part of Kennebec River. The charter authorized the company to build a bridge "across the Kennebec River." They did so, and the two bridges constitute in fact but the spans of a single bridge, which the company is bound to keep in repair; and that liability rests wholly upon the Bridge Company. *Commonwealth* v. *Worcester Turnpike Co., supra;* *Roxbury* v. *Same,* 2 Pick., 41; *Sawyer* v. *Northfield,* 7 Cush., 490; *Commonwealth* v. *Deerfield,* 6 Allen, 449; *White* v. *Quincy,* 97 Mass., 430; *Wheeler* v. *Worcester,* 10 Allen, 604; *Jones* v. *Waltham,* 4 Cush., 299; *Vinal* v. *Dorchester,* 7 Gray, 422; *Titcomb* v. *Fitchburg R. R. Co.,* 12 Allen, 259; *Young* v. *Yarmouth,* 9 Gray, 386; *Tinker* v. *Russell,* 14 Pick., 279.

Even if the location were valid, it would impose no liability

State *v.* Inhabitants of Madison.

upon the town. But the commissioners have no authority to locate a public highway over a toll bridge. *West Boston Bridge* v. *Co. Commissioners,* 10 Pick., 272; *Commonwealth* v. *Haverhill,* 7 Allen, 523; *Central Bridge Co.* v. *Lowell,* 4 Gray, 474.

The alleged location as a town way was void because the proceedings on their face gave the commissioners no jurisdiction. *Lewiston* v. *Co. Commissioners,* 30 Maine, 19; *Scarborough* v. *Same,* 41 Maine, 604. The legal effect of the proceedings on the petition for *certiorari* was to quash the location. *Dow* v. *True,* 19 Maine, 46; *Lancaster* v. *Pope,* 1 Mass., 86; *Commonwealth* v. *Sheldon,* 3 Mass., 188. The words "as laid out by the town of Madison" are material and must be proved as laid. *State* v. *Jackson,* 30 Maine, 29; *State* v. *Noble,* 15 Maine, 476.

*John S. Abbott,* by request of the county attorney and consent of the court and the defendants, conducted the prosecution, relying upon the law as stated upon a former hearing of this matter. *State* v. *Madison,* 59 Maine, 538.

DICKERSON, J. The party obliged by law to repair a public highway or toll bridge is liable criminally for neglecting to perform this duty, and civilly for damages caused by such neglect. The liability in both these respects depends, substantially, upon the same facts; in general an indictment lies where an action for damages lies in such cases, and *vice versa.* *Davis* v. *Bangor,* 42 Maine, 522; *Howard* v. *North Bridgewater,* 16 Pick., 190.

The most important question presented for our consideration is, whether the town of Madison is liable to indictment for not repairing that part of the bridge which is within its limits. In determining this question we shall consider the liability to indictment, and the liability for damages, as depending substantially upon the same facts. The proprietors of the Norridgewock Falls Bridge were incorporated in 1827, accepted their charter, built the bridge, took toll, rebuilt the bridge several times, and kept it in repair till 1844. In 1847 the county commissioners located a highway

over the place where the bridge now stands. A writ of *certiorari* to quash their doings was granted in 1847, but was never issued. The record shows that the commissioners had jurisdiction in the premises. It is familiar law that where the record shows that the county commissioners, in locating a highway, had no jurisdiction, their doings may be impeached collaterally. *Small* v. *Pennell*, 31 Maine, 267; *Goodwin* v. *Co. Commissioners*, 60 Maine, 332; *Scarborough* v. *Co. Commissioners*, 41 Maine, 605.

It is, also, equally well settled that when, it appears from their record that they had jurisdiction, but committed some error in their proceedings, such error can only be taken advantage of on a writ of *certiorari*. *Goodwin* v. *Inhabitants of Hallowell*, 12 Maine, 276; *Inhabitants of Pownal, pet'rs for cert.* v. *Co. Commissioners*, 8 Maine, 271.

The mere granting of a writ of *certiorari* is not tantamount to issuing the writ, and quashing the proceedings thereon. No judgment to quash the proceedings of the commissioners was rendered by grant of leave for the writ to issue. *Non constat* that judgment to quash would have been rendered if the writ had been issued. A writ of *certiorari*, like any other writ, is subject to be quashed for cause shown. The highway in question, therefore, must be regarded as a valid and subsisting highway.

If the town of Madison is liable, it is made so by R. S., 1857, c. 18, §§ 61, 37. These two provisions are harmonious, and counterparts of the same enactment. The liability to indictment under § 37, attaches to "those liable to repair," and the liability for damages provided in § 61, is predicated "of the county, town or persons obliged by law to repair." The question to be determined is, whether the town of Madison is "liable" to repair the highway over the bridge in question. If it is, it is also "liable" to indictment for neglecting that duty; if it is not "liable" to repair it is not "liable" to indictment, either under the statute or by the criminal law.

The changes in the legislation upon this subject are quite significant. Towns are not now, as formerly, "bound by law," or

made "liable," in express terms, to repair highways, town ways and bridges within their limits. The statute of Massachusetts, of which our statute of 1821 was a transcript, made them thus liable "when other sufficient provision was not made therefor," thus making their liability a qualified one. The statute of 1841, on the contrary, made the liability of towns, in terms, absolute. While those statutes restricted liability to indictment to municipalities, the statute of 1857, § 37, had a broader application, and extended such liability to "those liable to repair," generally. Under that statute, railroads, bridges, and turnpike corporations, and private persons were subject to indictment, when "liable to repair," as well as towns and plantations; in this respect all parties "liable to repair" stood upon the same footing.

In considering the authorities therefore upon this subject, it becomes necessary to examine the statutes under which the cases arose. The case of *Sawyer* v. *The Inhabitants of Northfield*, 7 Cush., 490, so much relied upon by the counsel for the defendants, originated under the statute of Massachusetts making towns liable, "when no other sufficient provision was made for repairs." The distinction between that case and the one at bar is the difference between a qualified and a general liability. So the case of *State* v. *Gorham*, 37 Maine, 461, came up under our statute of 1841, making towns positively liable. While that case, for this reason, is not directly in point, the reasoning of the court applies, with equal force, in the case under consideration. "The safety and convenience of those who travel upon our public ways," observes Rice, J., in that case, "have ever been primary objects in the estimation of the legislature. The introduction of railroads and the frequency with which they cross public ways, as well under bridges, as at grade, has greatly increased the hazards of ordinary traveling. It is important that the most certain, prompt and efficient means should be provided against those new and increasing causes of inconvenience and danger to travelers. Towns have the general supervision of highways. By holding them primarily responsible a very much more convenient and

certain remedy is afforded the public than could be had against private individuals or corporations."

The court further remarks in that case that this construction of that statute does not discharge railroad corporations, or other parties, required by law to maintain and repair bridges or highways, from their liability to do so, and that towns have a remedy against such parties by mandamus, or by action on the case.

A highway was laid out and established where the bridge in question stands. The bridge was rebuilt and kept in repair for several years by the town of Madison. That town is under the same legal liability to repair that highway that it is other highways within its limits.

It was not necessary to allege in the indictment the authority by which the highway was laid out. Therefore, the clause in the indictment, "as laid out by the town of Madison," may be regarded as surplusage. The general allegation that the highway was situated in the town of Madison, and was duly and legally laid out and established, is sufficient to authorize the admission of evidence of its location by the county commissioners, or by that town, as the presiding justice ruled.

Nor do we think it was necessary to set forth the width of the highway in the indictment. It has not been usual, we think, to do this in this State, whatever may have been the practice in England. The length, direction and termini of the highway are distinctly alleged in the indictment. The defendants were thus sufficiently informed what highway was meant. An additional allegation of the width of the highway was not necessary to enable them to prepare their defence. It was incumbent on the State to show that the defects alleged existed within the limits of the highway, whether its width was alleged in the indictment or not. Failing in this the prosecution could not be sustained. The objection interposed by the defendants upon this branch of the case may have been pertinent to the sufficiency, but not to the competency, of the evidence offered. There was, therefore, no error in overruling this objection, and admitting the record evidence, offered to show

the location of the highway both by the town of Madison and the county commissioners.

The highway described in the indictment was legally located and established in the town of Madison, and it was the duty of that town to keep it "safe and convenient for travelers." The jury have found that the town neglected to discharge this duty, and we see no reason why their verdict should not stand.

*Exceptions overruled.*

APPLETON, C. J., WALTON, BARROWS, DANFORTH and VIRGIN, JJ., concurred.